UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**MYLES BROCK**,

            Plaintiff,

v.

**CAROLYN W. COLVIN**, **Acting Commissioner of Social Security**,

            Defendant.

Case No. 3:15-cv-01021-KI

OPINION AND ORDER

    Merrill Schneider
    Schneider Kerr Law Offices
    P.O. Box 14490
    Portland, OR 97293

            Attorney for Plaintiff

    Billy J. Williams
    United States Attorney
    District of Oregon
    Janice E. Hebert
    Assistant United States Attorney
    1000 SW Third Ave., Ste. 600
    Portland, OR 97204-2902

Thomas Elsberry
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

   Attorneys for Defendant

KING, Judge:

Plaintiff Myles Brock brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Brock filed applications for DIB and SSI on June 9, 2011, alleging disability onset on August 14, 2009. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Brock, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on September 24, 2013.

On October 11, 2013, the ALJ issued a decision finding Brock was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on April 8, 2015.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

Page 3 - OPINION AND ORDER

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ identified substance addiction disorder and affective disorder as Brock's severe impairments. The ALJ also found that these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. After looking at the record, the ALJ concluded Brock retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. However, Brock has the following nonexertional limitations: he is able to understand and remember simple instructions and complete simple, routine tasks in two-hour increments with normal breaks for a total of eight hours in a workday; he should work independently, with only occasional brief, superficial interactions with coworkers and the general public; he should not do any customer service work. He should have no over-the-shoulder supervision and he should be in a work environment with few changes, a predictable routine, and clearly established expectations. He should not be exposed to unprotected heights or to moving mechanical parts.

Given this RFC, the ALJ found Brock capable of performing his past relevant work as an automobile detailer. Alternatively, Brock could perform other work in the national economy, such as industrial cleaner, motel cleaner, and mail sorter. As a result, the ALJ found Brock not disabled under the Act.

## FACTS

Brock, at 23 years old on his alleged disability onset date, has a GED and one year of college, and a work history from 2003 until 2010. His longest job lasted 13 months, performing

security services at the Portland Art Museum.  Brock had lived with a girlfriend for four years and was living with his parents at the time of his psychodiagnostic assessment with Marc Stuckey, Psy.D.  He had a driver's license, could cook with a microwave, and could perform household chores.  He did not like crowds and rarely shopped alone.  He read history, poetry, science, philosophy, and literature, and would hike in the woods.

Brock described six psychiatric hospitalizations due to medication problems and mania.  During manic phases, he had hallucinations and believed in ESP.  He had one major depressive episode in the year before he met with Dr. Stuckey, describing sadness and negativity.  He complied with medications intermittently.  He had attended counseling through LifeWorks from 2011.  Dr. Stuckey noted Brock's recent relapse with alcohol and diagnosed alcohol dependence, along with bipolar I disorder.  Dr. Stuckey found Brock capable of understanding, remembering and carrying out simple instructions, and making work-related decisions.  He also noted Brock's moderate difficulties interacting with the public, with supervisors, with co-workers, and responding to work-situations and changes in routine.

After meeting with Brock five times, over the course of nine months, Jennifer Reffel, PMHNP, offered her opinion that Brock had bipolar disorder and alcohol dependence in early remission.  She noted rapid cycles between mania and depression; during his manic times he was delusional and paranoid.  His medications were:  cogentin, haldol, lithium, trazodone, geodon, and ativan.  Despite the medications, Reffel reported continued mood swings.  She noted non-compliance with medications and alcohol use during manic times.  Nevertheless, she thought he continued to demonstrate mood wings even during periods of compliance and abstinence from alcohol.  She thought he would not be able to work.

Additional medical history is discussed further below.

## DISCUSSION

Brock challenges the ALJ's failure to perform a drug and alcohol analysis and to reject the opinion of his treating nurse practitioner.

I.    <u>Drug and Alcohol Analysis</u>

Under 42 U.S.C. §§ 423(d)(2)(C) and 1382c, a claimant cannot receive disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Social Security Ruling 13-2p sets out the process the ALJ uses in evaluating drug and alcohol addiction ("DAA"). The ALJ first assesses whether the claimant has a DAA. The answer in Brock's case was yes. The ALJ is next to assess whether the claimant is "disabled considering all impairments, including DAA[.]" SSR 13-2p, 2013 WL 621536, at *4. Specifically, the ALJ must "[a]pply the appropriate sequential evaluation process to determine whether the claimant is disabled considering all of his or her impairments, including DAA." *Id.* at *6. If the answer is yes, the ALJ must determine whether the claimant's disabling limitations would remain if he stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007).

Here, as Brock points out, the ALJ found substance abuse to be a severe impairment. However, the ALJ proceeded to discuss all the instances in which Brock's other severe impairment–affective disorder–was less functionally limiting when Brock was sober and in

Page 7 - OPINION AND ORDER

compliance with his medications. The ALJ neglected to evaluate Brock's RFC *with* the impact of his alcohol use. *See* Tr. 28 ("mental health exacerbations are caused by alcohol consumption," 2009 medical records reflect "recent and significant alcohol consumption," 2010 paranoia associated with "recent alcohol use," 2010 depression, suicidal thoughts, and aggression linked to "alcohol use," and 2011 psychiatric hospitalization associated with "binge drinking"); Tr. 29 (2012 treatment notes indicate "relapse with alcohol"); Tr. 30 (Dr. Stuckey diagnosed bipolar 1 disorder, and "alcohol dependence in early full remission" and his assessment "squares with the overall medical record showing relative stability in mood when the claimant is sober and medication compliant"); Tr. 31 (lay witnesses' testimony rejected for failure to mention effects of alcohol usage). Similarly, the ALJ found Brock not credible in part because his "continued alcohol usage undermines his allegations that his inability to maintain competitive employment results from his mental impairments rather than from his absence of sobriety." Tr. 32.

The question, then, is whether the ALJ's error is harmless. In *Parra*, the ALJ's findings were "ambiguous" about whether cirrhosis was disabling before the DAA analysis was conducted. 481 F.3d at 747. Despite the unclear five-step analysis, the court deemed the error harmless. "Although the decision does not explicitly label Parra's cirrhosis as disabling, the ALJ gave Parra the benefit of the doubt: the DAA Analysis assumed that Parra's cirrhosis was disabling and focused correctly upon whether abstinence would have cured this disability[.]" *Id.*

The Commissioner here wrongly insists the ALJ performed the DAA analysis correctly and does not argue harmless error. Brock acknowledges the possibility of harmless error, but contends the ALJ may not assume his mental impairment would improve without the complicating factor of alcohol use. Brock implies he used alcohol to self-medicate, while also

Page 8 - OPINION AND ORDER

arguing that in some instances his drinking during manic phases was a symptom of his mental impairment. He also points out the ALJ discounted his testimony, and the lay and medical opinions, by relying on his substance abuse.

This is not a situation like the one presented in *Parra* as nothing in the ALJ's opinion can be interpreted as a finding of disability when considering Brock's DAA. However, the Ninth Circuit has outlined other "formulations of the harmless error rule depending on the facts of the case and the error at issue . . . adher[ing] to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115. Here, the ALJ examined the medical records and concluded the evidence demonstrated Brock's alcohol use and noncompliance with medications caused his symptoms to worsen. She did not, for example, find the decision to be "difficult" or "clouded," and she had evidence of Brock's functioning during periods of sobriety. *Cf. Maloney v. Comm'r of Soc. Sec.*, No. 6:13-CV-00821-AC, 2014 WL 3871214, at *10 (D. Or. Aug. 5, 2014). Indeed, the ALJ described instances of improvement when Brock was not drinking and when he was compliant with medications. Tr. 29. Additionally, substance use can be a proper credibility factor. *See* SSR 13-2p (explaining substance use may be used as a credibility factor, so long as the policy in SSR 96-7p is followed); *see also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (lack of candor about substance abuse is a clear and convincing reason to question a claimant's credibility).

In sum, the ALJ's conclusions that Brock's mental impairment worsened with the use of alcohol, and that his symptoms were controlled during periods of sobriety and medication compliance, are supported by substantial evidence in the record. *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("if evidence exists to support more than

one rational interpretation, we must defer to the Commissioner's decision"). Accordingly, the ALJ's error in failing to assess Brock's impairments when considering alcohol use together with his mental impairment, as required by the DAA analysis, is harmless.

II.     Medical Evidence

Brock also challenges the ALJ's treatment of PMHNP Reffel's opinion. Reffel provided a letter in support of Brock in which she reported the existence of Brock's mood swings despite medication, and she opined he would be unable to work. She thought, in particular, that he would miss work at least two days per month, and would have difficulty with a 40 hour work week.

The ALJ gave her opinion little weight for three reasons: (1) Reffel is not a medically acceptable provider; (2) her assessment was not consistent with the records, particularly those showing improvement while medicated and while not drinking; (3) her treating relationship was short–just five times for thirty minutes; and (4) her opinion was inconsistent with Dr. Stuckey's.

As an initial matter, the fact that Reffel is not considered an acceptable medical source is not alone a sufficient reason to reject her opinion with respect to the severity of Brock's impairments. 20 C.F.R. §§ 404.1513(d), 416.913(d) (other sources may be considered when evaluating severity of impairments). The ALJ may reject the opinions of such sources by giving reasons that are "germane" to that source. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Some factors to consider include: (1) how long the source has known the claimant and how frequently the source has seen the claimant; (2) whether the opinion is consistent with other evidence; (3) the degree to which the source presents relevant evidence supporting an opinion; (4) how well the source explains the opinion; and (5) whether the source

has a specialty or area of expertise related to the claimant's impairments. SSR 06-03p, 2006 WL 2329939.

While the fact that Reffel treated Brock only five times is not a persuasive reason to give her opinion less weight (and the Commissioner does not rely on it), one of the factors the ALJ is permitted to consider is whether the opinion is consistent with other evidence. *Id.* In this case, the ALJ concluded it was not, and supported her conclusion by referring to the medical records reflecting improvement with abstinence and medication compliance, and by citing to Dr. Stuckey's examination. These were germane reason and the ALJ did not err.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this   27th   day of June, 2016.

                                          /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge